GLADNEY, Judge ad hoc.
Mrs. Eunice Herring brings this compensation suit against the Hercules Powder Company on behalf of herself and her two minor children for the sum of $30.00 per week for three hundred weeks as a result of the death of the husband -and father, C. S. Herring, Sr., on May 25, 1950. A judgment in the trial court rejected her demands and she has appealed.
Appellee concedes that should the defenses urged herein be not sustained, an - award of compensation should be made. For this reason, only those facts have been extracted from the stipulation which appear relevant to the issues raised.
C. S. Herring, Sr., on the occasion of his death, was engaged in hauling by truck and trailer pine stumps to the railroad to be shipped for the account of defendant. Riding on the vehicle with him at the time of the accident was his son, a minor fifteen years old, and three Negro employees. The vehicle driven by Mr. Herring consisted of a tractor and trailer, the latter being loaded with wood at the timé of the accident, weighing from ten to eleven tons. The truck-trailer units being operated by him were of a type known as Ford F-7, 1948 models, each of more than fifteen hundred pounds net load weight. It is stipulated that when acquired in February, 1950, all of its brakes were connected and 'had been operating efficiently; that originally and continuously the tractor part of said vehicular unit was equipped with hydraulic (vacuum) service and emergency brakes which were so constructed and designed that they could be attached by a connection provided with similar brakes operating upon all four wheels of the trailer part of said vehicular unit; that this said connection had not been made by Mr. Herring despite suggestions of his employees, and whose reason for not so doing was that in driving over the uneven surfaces which had to be traversed in order to secure the stumps being hauled, such a connection not infrequently became disconnected, although it was a simple matter to reconnect them when the vehicle reached the public highway.
All those aboard the truck and trailer were killed by a collision with a train at a point where a gravel road near Friendship, Louisiana crosses a railroad line controlled or owned by the Southern Advance Bag & Paper Company. The train involved was accustomed to make one round trip a day, leaving Hodge in the morning for Gibsland and returning that afternoon on an irregular schedule which varied as much as two hours, and at times did not operate at all.
As Herring drove toward the railroad crossing, the train with which he collided came from his left. His view to the left of the track was obscured by small timber, bushes, etc. up to twenty-five feet in height, so that a train could not be seen by a driver of a vehicle approaching, as was Herring on this occasion, until the driver was close to the track, and the train was practically at the crossing. Herring was driving about thirty-five miles per hour, but did not stop before going upon the *321 crossing. When he first saw the train he applied the brakes and endeavored to stop, leaving skid marks on the roadway measuring one hundred feet from where .they first appeared up to the point of collision.
There are two principal issues to be determined from application of Section 28 of Act 20 of 1914; LSA-R.S. 23:1081, providing:
“No compensation shall he allowed for an injury caused * * * (3) by the injured employee’s deliberate failure to use an adequate guard or protection against accident provided for him or (4) by the employee’s deliberate breach of statutory regulations affecting safety of life or limb.
“In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer.”
The issues are:
First, whether the claims of plaintiff are barred by reason of the deliberate failure of Mr. Herring to use an adequate guard or protection against accident provided for him; or
Second, whether Mr. tierring was guilty of any deliberate breach of statutory regulation affecting the safety of life or limb.
The District Judge concluded that the defendant had sustained its burden of proof and its defense - that the deceased, C. S. Herring, Sr., deliberately failed to use an adequate guard and protection against accident and accordingly rejected plaintiff’s demands. Because of this ruling, he pre-termitted passing on the other issue.
Counsel for appellant earnestly argue that under the facts found herein, the above defense is without application, and-reasons (1) that the words “provided for him” must be interpreted to mean only such guard or protection provided for him by the employer; (2) that the brakes of Herring’s trailer are not to be- considered an adequate guard or protection within the intent of the statute; (3) that failure to connect the trailer brakes despite suggestions from his employees was not a deliberate failure justifying a denial of the relief sought; and (4) that the deliberate failure to connect the brakes must be shown to have been the proximate cause of the accident, and unless the appellee meets this burden, it fails to comply with the statutory conditions imposed upon it.
(1) Appellant points out that the District Judge based his ruling on reasoning that the unified braking system on the two unit vehicle was an adequate guard or protection against accident “provided for him” and asserts that the vice of .this view is that the employer had not provided Herring with -anything.' Counsel for appellant assert that the words “provided for him” are not equivalent to “provided for himself” or “available to him,” and can only mean provided for him by the employer.
The word “provide” is of general ap-' plication, its meaning being qualified or determined by the prepositions or other words used with it. When used with “for,” such as “provide for,” or “provided for,” it is defined: to take care in advance, procure supplies; or to make preparations to avoid. The Winston Dictionary, College Edition. Black’s Law Dictionary, Third Edition, defines “provide:. To make, procure, or furnish for future use, prepare. Booth v. State, 179 Ind. 405, 100 N.E. 563, 566, L.R.A.1915B, 420, Ann.Cas.1915D, 987. To supply; to afford; to contribute. Keith v. Rust Land & Lumber Co., 167 Wis. 528, 167 N.W. 432, 435 [169 N.W. 428].” The foregoing definitions but illustrate the varied and many, uses of the word.
To accept appellant’s construction would’require'writing into our statute the words “by the employer” — words not to be found therein. Where the statutes of some states have been so written, the defense is appropriately restrained and benefits under the statute are denied to some fewer employees. The words “provided for” should be construed to mean furnish" or supplied, procured beforehand; or made ready for future use. Jackson v. Coxe, 208 La. 715, 23 So.2d 312.
No sound reason is suggested why, under appellant’s'interpretation of the provision, an award, of compensation should be made where the employee-driver owned *322 the tractor-trailer units in use, and to refuse it to him when the' vehicular units were owned by the employer and driven by the employee. In either event the workmen’s compensation act could take hold in every other respect. It seems to us that the statute becomes available as a defense if an adequate guard or protection has been provided the employee for the purpose of preventing his injury, irrespective of whether it has been furnished by the employer, a third person, or by the employee himself.
The decision in Brown et ux v. Kansas City Bridge Company, La.App., 191 So. 755, 757, is cited as holding the protection must originate with the employer. The court there had before it the question of an “adequate guard or protection”, and was not concerned with who provided the protection, which involved the use of a rail around the sides of a barge furnished by the employer, and the language used in the opinion insofar as it may apply to the question here under discussion constitutes obiter dictum.
(2.) The second argument advanced by appellant is that the brakes of Herring’s trailer are not to be considered an adequate guard or protection within the intent of the statute. Emphasis is on the point that the safeguard must be exclusively designed as a protection. In support thereof is cited Brown v. Kansas City Bridge Company, supra, wherein the court said:
“In the first place, the guard or protection with which the employee is charged with a deliberate failure to use, contemplates something which is provided by the employer principally as a safety or protection to the employee, and not that which is placed on the premises or on the machinery as a component part of it, and whose principal purpose is to facilitate or expedite the work. The law itself says the deliberate, failure to use the guard or protection has reference to a guard or protection 'against accident’ provided by the employer.
“If the defendant’s contention were adopted as a rule of construction in cases ®f this kind, it might be contended that the body of a wagon or truck, the emergency brake 'of a motor vehicle, the reins for driving a horse, the levers for starting and stopping dangerous machinery, were guards or protections and the employee injured because of his negligence and carelessness in using these might be precluded from recovering compensation where it is shown that the employee’ was warned to avail himself of these protections for his safety and he deliberately failed to do so. The effect of such a construction would be to open the way to defeat recovery of compensation in many cases because of gross negligence on the part of the employee, or in case of his intentional disobedience of instructions. We think one of the purposes of the compensation law was to prevent the employer from defeating recovery by the employee for an injury because of his contributory negligence. Haven v. Munson, La.App., 169 So. 819; Cole v. List & Weatherly Const. Co., La.App., 156 So. 88.”
Appellant’s argument that the guard must be exclusively designed as a protection is broader than the words used by the court above. There it is said, “ * * * contemplates something which is provided by the employer principally as a safety or protection to the employee * * Of necessity most safety devices on machinery must be so placed as to be of use and often are attached to and are a part of the machinery. Was the braking system of the trailer provided principally as a safeguard or protection to the employee? We think so. In addition to its availibility to aid the driver in greater control of the movements of the tractor-trailer unit in coming to a halt or in slowing down, the braking system of the trailer was necessarily essential to avoid consequences which could reasonably be anticipated if such vehicle be driven upon the highway with no other wheel control than that upon the wheels of the truck. With a trailer load of 20,000 pounds it is difficult to imagine a more dangerous undertaking than to enter the highway with no braking system to control the forceful momentum produced by movement and load. In recognition of just such dangers, the legislature sought to meet the situation by prescribing protection in the LSA-R.S. 32:284 from which *323 we quote in part: “No trailer or semitrailer acquired new shall be operated upon the public highways of this state unless it is equipped with adequate brakes operating on every wheel in contact with the road surface. These brakes shall be designed to be applied by the same motion of the driver that applies the brakes of the motive vehicle. The provisions of this paragraph shall not apply to trailers or semitrailers of less than fifteen hundred pounds net load weight.”
We believe, however, that brakes tó control heavily loaded trailers are essential to avoid highway accidents, and to avoid the type of accident as did occur here, the legislature took cognizance of the fact and prohibited the operation of the trailer upon highways of this state unless equipped as set forth above.
In defining what constitutes an adequate guard, etc., the Supreme Court in Farris et al. v. Louisiana Long Leaf Lumber Company et al., 148 La. 106, 117, 86 So. 670, 674, said the provision invoked, presupposes a specific danger, with an adequate guard and protection against it. The specific danger arising under the state of facts here presented was that of a highway collision or accident, a hazard foreseen and provided for by the braking equipment placed on the trailer. The protection thus provided was, in our opinion, adequate. Pigott v. Raymond Concrete Pile Company, 8 La.App. 428; Taylor v. Gulf Refining Company of Louisiana, 11 La.App. 270, 122 So. 162; Carter v. Christ et al., La.App., 148 So. 714; Daigle v. Moody et al., 175 La. 853, 144 So. 596.
It is not disputed that when the truck and trailer were acquired in February, 1950, all of said brakes were connected and had been operating efficiently. They were therefore an adequate guard or protection within the provision of the act.
(3) The next contention is that Herring’s failure to connect the brakes to the loaded trailer was not a deliberate failure as to bar recovery. Unquestionably the word deliberate is a most important limitation upon the negligent act of the employee, that is, the act of omission which creates the bar to recovery. Without the word deliberate, the very purpose of the act would in all likelihood be defeated by extending ad infinitum defenses which the act sought to proscribe. Judge Mills, speaking for the court in Cole v. List & Weatherly Construction Company et al., La.App., 156 So. 88, 90, had this to say:
“In the case of Carter v. Christ, supra, it is held that ‘deliberate’ is synonymous with ‘intentional,’ and that all that is required is that there is a safety guard available and that the employee knowingly fails to use it.
' “To the contrary, in McClendon v. Louisiana Central Lbr. Co., 17 La.App. 246, 135 So. 754, 756, the court adopts the following definition found in Webster’s New International Dictionary: ‘Well-advised; carefully considered; not sudden or rash; weighing facts and arguments with a view to a choice of decision; carefully considering the probable consequences of a step; circumspect; slow in determining ; to weigh in the mind.;. to consider the reasons for and against; to consider maturely ; to regard upon; to ponder.’
“The former opinion adopts a strict construction; the latter a liberal one.
“In many states compensation is denied where the injury results from willful misconduct of the workman. Under these statutes ‘willful’ is construed to mean a premeditated, obstinate and intentional wrongdoing as distinguished from mere heedlessness or carelessness. Bersch v. Morris & Co., 106 Kan. 800, 189 P. 934, 9 A.L.R. 1377; 23 A.L.R. 1179; Imperial Brass Mfg. Co. v. Industrial Comm., 306 Ill. 11, 137 N.E. 411, 26 A.L.R. 166; King v. Empire Collieries Co., 148 Va. 585, 139 S.E. 478, 58 A.L.R. 197.
“In our act there was no occasion to use the word ‘deliberate’ unless it was intended to qualify the failure to use an adequate guard. We take the view that the word ‘deliberate’ was used in the sense of willful rather than merely intentional. We think the broad meaning rather than the narrow should be applied.”
Reverting to the relevant facts set out above, it is evident that the trailer brakes were not connected by Mr. Herring, despite *324 suggestions of his employees, and the reason Mr. Herring did not connect .the brakes was that in driving over the uneven surfaces which had to be traversed in order to secure the stumps being hauled, such a connection not infrequently became disconnected, although it was a simple matter to reconnect them when the vehicle reached the public highway.
In Pigott v. Raymond Concrete Pipe Company, supra, the employee was killed by the overturning of a hoisting machine while unloading sand and.gravel from cars. The machine was located on a flat car and was operated by steam power. The sand and gravel was caught up by a bucket at the end of a seventy foot boom attached to the machine. When full the bucket and contents weighed eight or nine thousand pounds and its weight thus exerted a powerful pulling force on the machine. To counteract it, out-riggers were placed on either side ,of the machine. A helper asked decedent to let him place them in position, but he declined to do so, stating that they were not necessary. The out-riggers were not placed in position with the resulting overturning of the machine and death' of the employee. The court held there was a deliberate failure to use an adequate guard or protection.
The lower court thought the act of Herring was considered, intentional, wilful, and was deliberate within the meaning of the statute, relying strongly on the decision in the Pigott case, supra. We agree with this view.
. (4) Appellant urges that for appellee to avail itself of the defense, it must prove that' the employee’s deliberate failure to use an adequate guard or protection was the proximate cause of the injury or death. In Penton v. Sears, Roebuck & Company, La.App., 4 So.2d 547, 549, Judge Ott, speaking for the Court of Appeal, First Circuit, said: “As to what constitutes the, or a proximate, cause of an accident, depends largely upon the particular circumstances of each case. One of the most satisfactory definitions of proximate cause is that the accident must be the natural and probable consequence of the act of negligence, or, stated in a different way, the negligence and the resulting injury must be known by common experience to be a natural and usual sequence — that is, according to the usual course of events, the accident follows the negligence. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., pp. 346, 347, § 2533.”
The evidence here gives us a mental picture of Mr. Herring being reminded by apprehensive employees to connect the hydraulic (vacuum) type brakes of the trailer before proceeding along the highway with a load of ten tons, of his deliberate refusal to heed this request on the. ground that it would be too much trouble, of his approach to a railroad crossing the highway, and then his realization of danger. When he first sáw the train he applied the brakes and endeavored to stop, leaving skid marks on the roadway measuring one hundred feet up to the point of collision. At the speed of thirty-five miles per hour, ordinary braking results could have been expected but for the extremely heavy load of stumps being carried on the trailer over four wheels uncontrolled except only by the slowing of the wheels of the truck. Under such circumstances, difficulty in coming to a stop was a serious problem. The momentum- of the trailer undoubtedly pushed the truck ahead and rendered the brakes of the truck ineffective. By falling back on our common experience, we reach the opinion that had Mr. Herring attempted to stop under the same circumstances, except with the trailer brakes connected and operative, he would have come to a stop within one hundred feet and the accident would not have occurred. We cannot imagine other factors of negligence which might rule out the negligent act of Mr. Herring as the proximate cause of the accident. Certainly it is true that the act of Mr. Herring was negligent, deliberate and wilful. The failure to connect the brakes was an act of fault which accompanied him to the very moment of collision. We think the accident was the natural and probable sequence of the act of negligence.
The second defense is under the (4) proviso of LSA-R.S. 23:1081, and is whether Mr. Herring was guilty of any deliberate breach of statutory regulation affecting the *325 safety of life or limb. Specifically, it is said that he failed to observe the stop, look and listen law. Under LSA-R.S. 45:562, 563, the operator of any railroad track intersecting a public road or street is required to erect and maintain a signboard on each side of the track and on the right side of the road, not less than fifty feet nor more than seventy-five feet from the nearest rail. The board must be not less than ten feet from the ground to the top of the sign, which shall measure forty inches by fifty inches and be painted white with red lettering as follows: Louisiana Law Stop.
It further provides: “No person shall drive or propel any automobile or other motor driven vehicle upon the intersection of a railroad track and a public highway or municipal street at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for approaching trains.”
The motor vehicle act, LSA-R.S. 32:243, imposes the duty upon every person when approaching such a crossing as above referred to, to bring his vehicle to a complete stop in such a manner as to enable the driver of the vehicle to observe the approach of trains and cars by looking down the track in both direction's and by listening therefor before proceeding. In the event it is impossible so to do, then such persons shall proceed only with the greatest caution and at their peril.
The defense under the fourth proviso seems to us untenable. The deceased, as evidenced by the one hundred feet of skid marks, was endeavoring to stop his vehicle and that he did not do so under no stretch of the imagination could his breach of the statute be said to be a deliberate breach thereof.
It is our conclusion that appellee has properly discharged the burden of proof placed upon the employer by LSA-R.S. 23:1081 as to the defense that the death of Mr. Herring was caused by his deliberate failure to use an adequate guard or protection against accident provided for him and therefore the judgment appealed from rejecting plaintiff’s demands and dismissing her suit is affirmed at appellant’s costs.
HARDY, J., dissents and assigns written reasons. ;
KENÑON, J., not participating.