MOISE, Justice.
This is a Workmen’s Compensation suit brought under Act No. 20 of 1914, as amended, LSA-R.S. 23:1021 — 1351, Chapter 10, in which petitioner, Mrs. Eunice Herring, as surviving widow, seeks to recover compensation for herself and the minor children of C. S. Herring, deceased.
The decedent met his death while performing services for the Hercules Powder Company. Plaintiff prays for $30' per week for 300 weeks, $300 for the funeral expenses of her husband, and the additional sum of $300 to cover the expense incurred in connection with the burial of her son, Gerald Herring, who was also killed at the time of this accident.
We granted a writ of certiorari, on the application of the surviving widow, to review the judgment of the Court of Appeal, Second Circuit, affirming the decision of the trial court denying the surviving widow and children of decedent employee Workmen’s Compensation on the grounds of his “deliberate failure to- use an adequate guard or protection against accident provided for him”. 55 So.2d 319.
*165 Briefly, the stipulated facts of record reflect that the decedent (defendant’s employee), his son, and three colored employees riding with him on a truck or tractor pulling a trailer loaded with pine stumps being- transported to the railroad to he shipped for the account of defendant employer, were all killed when the vehicle ran into a train. The train with which decedent collided came from his left, as he was proceeding on' a gravel road in a wooded section. He did not stop his vehicle in approaching the crossing. To the left of the track was' a growth of timber, bushes and shrubbery of irregular height, ranging from ten to twenty-five feet, adjacent to the tract and road and this growth and underbush obstructed decedent’s view to the left, so that the train could not be seen as he approached the tracks on this fatal occasion. It was only after he was close to the tracks and the train was practically at the crossing that it could have been observed. Immediately following the wreck the railroad cut away the growth. The decedent was travelling about 35 M.P.H., and when he first saw the train he applied the brakes and endeavored to stop, leaving skid marks on the roadway measuring 100 feet from where they appeared up to the point of collision. The train with which decedent collided was privately operated and controlled and made only one round trip a day with an irregular schedule. The truck being driven by decedent was oivned by him and was equipped with hydraulic (vacuum) service and emergency brakes which were so constructed and designed that they could be attached by a connection provided with similar brakes operating upon all four wheels of the trailer part of the vehicular unit. It is stated that this connection had not been made by decedent, despite suggestions of his employee, and that decedent’s reason for not connecting the brakes was that in driving over the uneven surface which had to be traversed in order to secure the stumps being hauled, such connection frequently disconnected.
The provisions of Section 28 of Act No. 20 of 1914, as amended, LSA-R.S. 23:1081, have been invoked by the defendant for denying recovery hy the widow and minor children. The pertinent parts of this Act read:
“No compensation shall be allowed for an injury caused (1) by the injured employee’s wilful intention to injure himself or to injure another, or * * * (3) by the injured employee’s deliberate failure to use an adequate guard or protection against accident provided for him or (4) by the employee’s deliberate breach of statutory regulations affecting safety of life or limb. * * *” Section 28.
“In determining whether or not m employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of *167 proof shall he upon the employer” Paragraph 2, § 28.
Article 18 of the LSA-Civil Code declares that the “most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.” Thibaut v. Board of Com’rs of Lafourche Levee District, 153 La. 501, 96 So. 47; Curatorship of Parks, 210 La. 63, 26 So.2d 289, 173 A.L.R. 1056; Mills v. City of Baton Rouge, 210 La. 830, 28 So.2d 447 and Melancon v. Mizell, 216 La. 711, 44 So.2d 826.
Consideration of the historical background of Act No. 20 of 1914 will reveal the reasons or causes which induced the Legislature to enact it.
Historical Background: The Workmen’s Compensation Law originated in Germany. From Germany the law infiltrated into France, from France into England and from England into the United States of America. A German industrialist calculated that he had to- include the cost of repair' and replacement of his industrial machines in connection with his industrial operations, and that a necessary part of such operations were his employees, who, while performing services, were often injured, sometimes beyond repair or replace- ' ment. In his calculations, he discovered that he had made no provision for the repair or replacement of these human machines. Thereupon, he conceived the idea that he would apply the same rule as to cost of industrial machines to the human machine, and thusly, the Workmen’s Compensation Law came into being. The Law — Act No. 20 — -was born in Louisiana in 1914.
To make recovery certain for losses to the human machine (the employee) the Legislature enacted Section 4 (1) of Act No. 20 of 1914, LSA-R.S. 23:1042, which act abolished the defenses of the employer, (1) contributory negligence, (2) the fellow-servant doctrine, and (3) assumption of the risk. In order to have all parties before the court, the Legislature enacted Section 4 (2) which provides that if the employer elect not to come under the Act, it would be presumed “that the injury to the employee was the direct result and arose out of the negligence of the employer, and that such negligence was the proximate cause of the injury; and in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence”. The enactment — Section 34, LSA-R.S. 23:1032 — excluded an action under Article 2315 of the LSA-Civil Code. Roy v. Mutual Rice Company of Louisiana, 177 La. 883, 149 So. 508 and Blackburn v. Chenet, La.App., 42 So.2d 288.
Judge Hardy of the Court of Appeal, Second Circuit, in dissenting from the majority holding, in the instant case, said [55 So.2d 325]:
“In my opinion this case involves simply a definition of the provision *169 that compensation shall not be allowed for any injury caused by ‘the injured employee’s deliberate failure to use an adequate guard or precaution against accident provided for him * * *.’
“Taken in contemplation of the further provision that the burden of proof shall be upon the employer, I do not ■consider that in the instant case the ■employer has established the fact that the so-called guard or precaution, even if used, would have been adequate to prevent the accident.
“Although I feel that the above should dispose of the matter, nonetheless, I am constrained to assert that the clear, plain, unambiguous, logical and definite meaning of the words ‘provided for him’ conclusively indicates the furnishing of an extra, additional and unusual precaution or device to the employee by the employer.”
The proof offered by the defendant is not sufficient and does not warrant a judgment in its favor. The employer neither owned, provided, nor inspected the brakes or trailer. Therefore, how could it know the condition of the brakes—whether they were in good order or not. There is no showing that the deceased disobeyed orders or that he was obstinate, or hardheaded, in not connecting the brakes. Furthermore, he did give a good reason why these hydraulic brakes were not connected in the past and that was because the roads over which he daily travelled in the scope of his employment were so uneven and rough the brakes would not hold and became disconnected. Certainly, there was no deliberate intent on his part to harm himself or his co-workers. The facts show that the brakes evidently were faulty if they became so easily disconnected. 'If travelling over the rough terrain caused the brakes to become disconnected, how can we say that, if connected, they would have remained connected at the scene of the accident. Certainly, we cannot assume that the failure to connect was the proximate cause of the accident. The law imposes the burden of proof on the defendant. This defendant has not met the issue by showing an inspection of the brakes, nor has it been shown that, if the brakes were defective, the defendant provided the necessary safe appliance. Sitting as judges, we cannot presume or take by implication anything to bolster this special defense.
We have found no deliberate violation of any statutory regulation, and therefore Section 28(4) of the statute is not pertinent to this case.
Having considered the .points raised by the defendant in urging its reasons for dismissing plaintiff’s suit, we are convinced that the defendant has not met the paramount issue by proving the facts necessary to sustain its defense under the law. Were we to give effect to the defenses urged, we would have to adopt a construction that would revive the abolish *171 ed defense of contributory negligence. This cannot be done.
The needs of successive generations may make restrictions on defenses imperative today which were vain and capricious to the vision of time past.
For the reasons assigned, the judgment appealed from is annulled, voided and reversed, and it is now ordered that there be judgment in favor of plaintiff, Mrs. Eunice Herring,. for herself, individually, and for the use and benefit of the two minor children, C. S. Herring, Jr. and Ann Herring, and against the defendant, Hercules Powder Company, in the full sum of $30 per week for 300’ weeks, from the 25th day of May, 1950, together with. 5% interest on each past due installment; together with the additional sum of $300 for funeral expense incurred in the death of her husband, C. S. Herring, together with 5% interest from May, 1950. Defendant-appellant to1 pay all cost.
Mc'CALEB, J., concurs in the decree.
HAWTHORNE, J., dissents and assigns written reasons.